UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CARL DAVID,

      Petitioner,

v.

KEN ROMANOWSKI,

      Respondent.

Case No. 12-cv-15194
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
[1] AND DENYING A CERTIFICATE OF APPEALABILITY**

---

Petitioner Robert Carl David was convicted of sexually abusing two minor foster children who were then living in the home he shared with his wife. After unsuccessfully challenging his convictions on appeal in state court, Petitioner, through counsel, filed this Petition for habeas corpus relief under 28 U.S.C. § 2254. The Court concludes that Petitioner's claims do not warrant habeas relief. Accordingly, the Petition will be denied.

## I.  BACKGROUND

Petitioner was charged in two separate cases with sexually abusing two underage foster children. "J.B." was nine years old at the time of her alleged abuse, and "D.J." was eleven or twelve years old at the time of her alleged abuse. In J.B.'s case, Petitioner was charged with one count of first-degree criminal sexual conduct and two counts of second-degree sexual conduct. In D.J.'s case, Petitioner was charged with one count of first-degree criminal sexual conduct, with an alternative count of second-degree criminal sexual conduct. The two cases were consolidated for trial before a jury in Wayne County Circuit Court.

The first witness at Petitioner's trial was his wife, Annie J. Davids.[1] (*See* Dkt. 6-4, Mar. 11, 2009 Tr. at 196–247.) Ms. Davids testified that, in May 2008, her son told her something that caused her to ask her foster child J.B. whether anybody in the home had touched her inappropriately. J.B. was nine years old at the time, and she informed Ms. Davids that Petitioner would come in her room every morning and that it happened too many times to count.

Ms. Davids called Protective Services, Lutheran Social Services, the police, and a friend who was a social worker. The police instructed her to take J.B. to the hospital where J.B. gave a less-detailed version of the events to a doctor. After they went to the hospital, Ms. Davids talked to a detective, and when she got back home, Petitioner was gone. The next morning, Petitioner's sister called Ms. Davids and said that Petitioner was at her home in Illinois. Ms. Davids noticed that Petitioner treated J.B. differently than the other children in the house by giving J.B. candy or taking her out to dinner with him and Ms. Davids.

On cross-examination by defense counsel, Ms. Davids stated that, from time to time, J.B. had a problem with lying and stealing.  Ms. Davids also denied ever seeing any inappropriate contact between Petitioner and their foster children.

Ms. Davids' son, Khalil O'Banner, testified that he lived in the Davids' home from January to June of 2008. (*See* Mar. 11, 2009 Tr. at 252–264.) He got along well with Petitioner, but in February of 2008, he started noticing things that were out of the ordinary. He saw Petitioner masturbate and then go in the bathroom where J.B. was. He heard them whisper and then both of them came out of the bathroom. On numerous occasions, Petitioner left his two young foster children in the bathtub while he was in J.B.'s room behind a closed door. Mr. O'Banner was a former social worker, and after another incident where he saw J.B. sitting on

---

[1] Though Petitioner spelled his surname as "David" in his Petition, his wife used the spelling "Davids" at trial. (Trial Tr. Vol. I Mar. 11, 2009 at 196.)

Petitioner's lap, he informed Ms. Davids that something improper was going on. His mother became upset and asked J.B. about the matter later that evening. Mr. O'Banner denied seeing Petitioner touch J.B.'s "private parts," and he claimed that none of the children ever said anything to him about being inappropriately touched by Petitioner.

J.B. was ten years old at Petitioner's trial and no longer living with Petitioner or Ms. Davids. (*See* Dkt. 6-5, Mar. 12, 2009 Tr. at 53–94.) J.B. testified that when she lived with Petitioner and Ms. Davids, Petitioner would get in bed with her and touch her. She said she would lie on top of him with her belly on his belly, and the "front middle part" of his body would touch her body. He would move her up and down. She said that other times, he used his finger to touch the private part she used to "pee," and sometimes, he put his hand down her pants and touched her "middle part." She said that one time he took her hand and made her rub his "middle part," which he used for "peeing." He also reached into her pants in the kitchen on some occasions and kissed her on the mouth. He would also "grab [her] hand" and "ma[ke] [her] touch [her]self." J.B. said that Petitioner would buy her more candy, ice cream, chocolate, and toys and that he told her not to tell anyone about what they were doing. She thought at the time that she would get in trouble if she disclosed Petitioner's abusive behavior, but eventually she informed Ms. Davids about it.

D.J., the other complainant in the case, was eleven or twelve years old when she lived with the Davids. (*See* Mar. 12, 2009 Tr. at 96–123.) D.J. testified that one night when she was in bed asleep, Petitioner came into her room and licked her "private area." Petitioner told her not to tell anyone about it because, if she did, she would not be able to see her mother, father, brothers, and sisters. After she stopped living with Petitioner, she disclosed the incident to her mother. She testified that she did not disclose the abuse sooner because she was afraid of Petitioner.

The officer in charge of the case, Detective Marc Abdilla, testified that Petitioner was arrested in Illinois where he had been living with his sister. (Mar. 12, 2009 Tr. at 135.) Dr. Susan Horling testified that she examined J.B. due to a complaint of physical or sexual abuse. (*Id.* at 166.) She did not see any injuries, and she did not use a rape kit because there was no report of vaginal penetration. (*Id.* at 168–70.)

Petitioner did not testify, but he called four witnesses in his behalf: Carol Schiller, Constance Rutledge, Carol Young, and Gerald Young. Ms. Schiller testified that she worked for Lutheran Adoption Services and that she prepared an adoption report for J.B. The report indicated that J.B. had some behavioral issues, including lying. Ms. Schiller, however, opined that lying was normal for a foster child because foster children often lie as a coping mechanism for stress.

Constance Rutledge was a Child Protective Services worker. (Mar. 12, 2009 Tr. at 139–65.) She testified that she interviewed D.J., who stated that no one had touched her inappropriately while she was in the various foster homes. When D.J. was asked why she waited such a long time to report the incident with Petitioner, she merely shrugged her shoulders and said she did not know why. Ms. Rutledge also interviewed J.B., who said that the only inappropriate touching that took place in the Davids' home was Petitioner's touching that she had reported to Ms. Davids.

Petitioner's sister, Carol Young, testified that Petitioner came to live with her in May of 2008. (Mar. 12, 2009 Tr. at 178–87.) During that time, she overheard Ms. Davids tell Petitioner over the telephone, "You will not divorce me. You are mine, and I can do to you what I wish." In another conversation, Ms. Davids was angry with Petitioner because he had withdrawn some money from his checking account. According to Ms. Young, Ms. Davids told Petitioner during

4

their telephone conversation, "I'm going to hurt you, and I'm going to hurt you real bad." Ms. Young also testified that in 2007, she and her husband stayed at the Davids' home for several days on two occasions and that she did not notice anything unusual about Petitioner's actions towards J.B. She described Petitioner as a tender-spirited person who would help anyone.

Gerald Young was Carol Young's husband and Petitioner's brother-in-law. He testified that in his opinion, Petitioner's character was impeccable and that Petitioner had never before been accused of sexual abuse. (*See* Mar. 12, 2009 Tr. at 188–91.)

The defense theory was that there was insufficient evidence of either first- or second-degree criminal sexual conduct. Defense counsel argued to the jury that D.J.'s testimony was clearly suspect, that J.B.'s credibility was also in question, and that the witnesses' testimony was insufficient to establish penetration.

On March 13, 2009, the jury found Petitioner guilty of one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct as to J.B. The jury also found Petitioner guilty of one count of first-degree criminal sexual conduct as to D.J. On March 27, 2009, the trial court sentenced Petitioner to concurrent terms of twenty-five to sixty years in prison for the first-degree criminal sexual conduct convictions and three to fifteen years in prison for the second-degree criminal sexual conduct convictions.

In his direct appeal, Petitioner argued that (1) D.J.'s "prior acts" testimony should have been excluded under Michigan Rule of Evidence 403; (2) Mich. Comp. Laws § 768.27a was an unconstitutional ex post facto law; (3) there was insufficient evidence that he penetrated J.B.; (4) the trial court erred reversibly by refusing to instruct the jury on J.B.'s prior inconsistent statements; (5) he was denied a fair trial by the trial court's failure to grant the jury's request to review the complainants' testimony; and (6) the trial court abused its discretion by not departing

below the mandatory minimum sentence for first-degree criminal sexual conduct. The Michigan Court of Appeals rejected these arguments and affirmed Petitioner's convictions and sentence in an unpublished per curiam opinion. *See People v. David*, No. 291537, 2010 WL 4671030 (Mich. Ct. App. Nov. 18, 2010). Petitioner raised the same claims with the Michigan Supreme Court, which denied leave to appeal on September 4, 2012, because it was not persuaded to review the issues. *See People v. David*, 819 N.W.2d 887 (Mich. 2012).

On November 26, 2012, Petitioner filed his habeas corpus petition through counsel. He asserts as grounds for relief that: (1) the improper admission of prior acts testimony deprived him of a fair trial; (2) Michigan Compiled Laws § 768.27a is an unconstitutional *ex post facto* law; (3) there was insufficient evidence of first-degree criminal sexual conduct with J.B.; (4) the trial court erred by refusing to instruct the jury on the impeachment of J.B. with her prior inconsistent statements; (5) the trial court deprived him of a fair trial by failing to grant the deliberating jury's request to review the testimony of the two complaining witnesses; and (6) his sentence is cruel and unusual punishment, and trial counsel was ineffective for failing to argue in favor of a lesser term. Respondent Ken Romanowski filed a response in opposition to the Petition. (Dkt. 5.)

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Michigan Court of Appeals' decision on direct appeal was the last explained decision from the state courts "on the merits" of David's habeas claims. Accordingly, the Court reviews that decision under the deferential standard of § 2554(d). *See Davis v. Rapelje*, 33 F. Supp. 3d 849, 855–59 (E.D. Mich. 2014).

## III. ANALYSIS

The Court finds that none of David's claims are grounds for habeas relief. The Michigan Court of Appeals' determinations as to the prior acts evidence, Michigan Compiled Laws § 768.27a, sufficiency of the evidence, and ineffective assistance of counsel were not contrary to or an unreasonable application of clearly established federal law. Petitioner's claim regarding the jury's request to review testimony is procedurally defaulted, and in the alternative, lacks merit. Finally, Petitioner's Eighth Amendment sentencing claim is unexhausted, and in the alternative, also lacks merit. For these reasons, the Court will deny the Petition.

### A. Prior Acts Evidence

David's first claim is based on the trial court's decision to allow "D.J." to testify about her abuse in the consolidated trial. Initially, the cases were separate, with one criminal complaint as to D.J. and another criminal complaint as to J.B. The cases were set for separate trials, and the prosecution moved pursuant to Michigan Rule of Evidence 404(b) to admit the statements of each Complainant at the trial involving the other. (Dkt. 6-2, Tr. of Dec. 30, 2008 at 4.) Defense counsel objected, and stated that if the motions were to be granted, his preference would be for the court to consolidate the cases for trial. (*Id.*) The court consolidated the cases. (Dkt. 6-3, Tr. of Feb. 6, 2009 at 13.) At that point, Defense counsel maintained that allowing each victim to

testify regarding her abuse with respect to the case involving the other victim would violate

Michigan Rule of Evidence 403 as being more unduly prejudicial than probative. The Michigan

Court of Appeals addressed this issue as follows:

> Evidence that is admissible under MCL 768.27a is subject to exclusion under MRE 403. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Although the other-acts evidence in this case was prejudicial in the sense that it was damaging to defendant, "unfair prejudice" for purposes of MRE 403 does not mean any prejudice, but rather refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock."

> Defendant contends that a lack of similarity between the sexual acts against each victim supports excluding the evidence under MRE 403. But as this Court explained . . . "similarity is simply an inapposite consideration under MCL 768.27a." The alleged lack of similarity is simply not a basis for concluding that the evidence was unfairly prejudicial. Defendant also argues that the evidence should have been excluded under MRE 403 because of its tendency to bolster the credibility of each victim concerning the alleged sexual abuse. However, that is a permissible purpose of the evidence. Evidence offered under MCL 768.27a properly can be used to show a defendant's propensity to commit criminal sexual behavior against a minor. Thus, use of the evidence for this purpose does not implicate MRE 403 by injecting considerations extraneous to the merits of the case. Defendant has not shown that the other-acts evidence should have been excluded under MRE 403. Lastly, although defendant also argues that the other-acts evidence was not admissible under MRE 404(b), because the evidence involves "listed offenses" under MCL 28.722, the admissibility of the evidence is governed by MCL 768.27a, and it is unnecessary to consider MRE 404(b).

*David*, 2010 WL 4671030 at *1–2 (citations omitted). In his Petition, David renews his argument

that D.J.'s testimony was admitted in violation of Rule 403 because the substance of her

allegations was not factually similar to that in J.B.'s testimony. (Pet. at 16–21.)

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in

federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). There is an

exception if "the state-court ruling is so fundamentally unfair that it amounts to a due process

violation." *Thomas v. Berghuis*, No. 15-1164, — F. App'x —, 2015 WL 5313636, at *4 (6th Cir.

Sept. 10, 2015). "[C]ourts 'have defined the category of infractions that violate fundamental fairness very narrowly.'" *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "Otherwise stated, a state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

Here, Petitioner is making an evidentiary, not a constitutional argument: "The evidence of the other acts in this case cannot survive the scrutiny of Rule 403's microscope." (Pet. at 21.) "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citations omitted). Accordingly, his arguments "involve[] no constitutional dimension." *Bey*, 500 F.3d at 523. They cannot, therefore, be a basis for federal habeas relief.

Furthermore, in this case, the applicable statute provided:

> In a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

Mich. Comp. Laws § 768.27a. A "listed offense" "include[s] the various forms of criminal sexual conduct." *People v. Dobek*, 732 N.W.2d 546, 567 n.16 (Mich. Ct. App. 2007). Evidence admissible under that statute is still subject to Michigan Rule of Evidence 403; however, "[t]he weighing of the probative versus the prejudicial value of evidence is left to the sound discretion

of the trial judge. It is not the role of federal habeas review to decide whether a state trial judge's evidentiary decisions were proper but rather whether constitutional rights were violated." *Bower v. Curtis*, 118 F. App'x 901, 906 (6th Cir. 2004). The trial court found, and the Court of Appeals affirmed, that the probative value of the evidence was not outweighed by the potential for unfair prejudice. *David*, 2010 WL 4671030 at *1. In the absence of a constitutional violation, which is not supported by governing case law, it is not for this Court to disturb this decision.

For these reasons, the Court will not grant relief on Petitioner's first claim.

## B. Ex Post Facto

Petitioner's next argument does present a constitutional question: he says that Michigan Compiled Laws § 768.27a, which was part of the basis for admitting the prior acts testimony, "altered the legal rules of evidence tha[t] the law required at the time of the commission of the offense, in order to convict" him, in violation of the *ex post facto* clause of the United States Constitution. (Dkt. 7, Reply Br. at 4.)

"The Constitution prohibits both federal and state governments from enacting any '*ex post facto* Law.'" *Peugh v. United States*, 133 S. Ct. 2072, 2081 (2013) (quoting U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10). For a criminal law to be *ex post facto*, it "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17 (1981) (citations omitted). The *ex post facto* clause prohibits four categories of laws:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

10

*Calder v. Bull*, 3 U.S. 386, 390 (1798) (seriatim opinion of Chase, J.)

To start, § 769.27a was not retrospective as to Petitioner. That section was enacted in 2005 and became effective on January 1, 2006. *See People v. Barke*r, No. 294252, 2010 WL 5175459, at *2 (Mich. Ct. App. Dec. 21, 2010). The crimes against J.B. occurred between December 1, 2007 and April 28, 2008 (Trial Tr. of Mar. 11, 2009 at 21), and the crime against D.J. occurred between December 6, 2007 and April 1, 2008. (*Id.* at 8.) Section 768.27a was in effect by the time the crimes occurred in both cases. Therefore, its application at Petitioner's trial in 2009 was not retroactive and did not violate the Ex Post Facto Clause.

Even assuming the statute was applied retroactively, the Michigan Court of Appeals addressed Petitioner's challenge as follows:

> This Court has previously considered and rejected defendant's constitutional challenges to MCL 768.27a. In *People v. Pattison*, 741 N.W.2d 558 (2007), this Court held that MCL 768.27a does not invade the Supreme Court's exclusive rulemaking authority because it is a substantive rule of evidence that does not principally regulate the operation or administration of the courts. The Court in *Pattison* also held that application of MCL 768.27a does not violate the Ex Post Facto Clause, because it does not lower the quantum of proof or value of the evidence needed to convict a defendant. Accordingly, there is no merit to defendant's constitutional challenges to MCL 768.27a.

*David*, 2010 WL 4671030 at *2 (citations omitted). This determination was not contrary to, or an unreasonable application of, Supreme Court precedent. In *Carmell v. Texas*, 529 U.S. 513, 533 n.23 (2000), the Supreme Court explained,

> Ordinary rules of evidence . . . do not violate the [Ex Post Facto] Clause. Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as "unfair" or "unjust," they do not implicate the same kind of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard.  Moreover, while the principle of unfairness helps explain and

shape the Clause's scope, it is not a doctrine unto itself, invalidating laws under the Ex Post Facto Clause by its own force.

Similarly here, § 768.27a "did not alter the quantum of evidence necessary to convict [Petitioner]. Rather, it expanded the range of admissible testimony." *Frazier v. Huffman*, 343 F.3d 780, 801 (6th Cir. 2003).

Accordingly, the Court will not grant relief on Petitioner's second claim.

### C. Sufficiency of the Evidence

Petitioner next argues that the prosecution did not present sufficient evidence to sustain his conviction for first-degree sexual conduct as to J.B. (Pet. at 27–35.) The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

The elements of first-degree criminal sexual conduct, as charged as to J.B., "are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v. Lockett*, 814 N.W.2d 295, 307 (Mich Ct. App. 2012) (citing *People v. Hammons*, 534 N.W.2d 183 (Mich Ct. App. 1995)); *see also* Mich. Comp. Laws § 750.520b(1)(a). "Sexual penetration" is defined in the statute as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . ." Mich. Comp. Laws § 750.520a(r). "According to the law, 'penetration' is any intrusion,

12

however slight, into the vagina or the labia majora." *Lockett*, 814 N.W.2d at 307 (emphases in original); *accord People v. Legg*, 494 N.W.2d 797, 798 (Mich. Ct. App. 1992) ("The labia are included in the 'genital openings' of the female."); *People v. Bristol*, 320 N.W.2d 229, 230 (Mich. Ct. App. 1981) (explaining that the female genital opening includes the labia).

Indeed, as the  Michigan Court of Appeals ruled regarding  Petitioner's sufficiency-of-the-evidence claim :

> A person is guilty of first-degree CSC if he engages in sexual penetration with a person under the age of 13 years. MCL 750.520b(1)(a); *In re Hawley*, 238 Mich.App. 509, 511, 606 N.W.2d 50 (1999). MCL 750.520a(r) defines "sexual penetration" as sexual intercourse, cunnilingus, fellatio, anal intercourse, *or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body*, but emission of semen is not required.
>
> The prosecution need only show penetration of the genital opening, not the vagina, and touching of the labia majora is sufficient to establish penetration. *People v. Bristol*, 115 Mich.App. 236, 237–238, 320 N.W.2d 229 (1981). The victim's testimony alone can provide sufficient evidence to support a conviction. *See People v. Smith*, 205 Mich.App. 69, 71, 517 N.W.2d 255 (1994), *aff'd* 450 Mich. 349, 537 N.W.2d 857 (1995), *amended* 450 Mich. 1212, 548 N.W.2d 625 (1995). JB's testimony describing how defendant touched her "private part" with his finger, and explaining that defendant would move his finger and that this made her feel strange, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find that defendant penetrated JB by touching her clitoris with his finger for purposes of sexual gratification. Thus, there was sufficient evidence of penetration to support defendant's conviction. Furthermore, contrary to what defendant asserts, we found nothing inconsistent between the prosecutor's closing argument and the testimony at trial. The prosecutor's comments properly were based on the evidence and reasonable inferences arising from the evidence. *People v. Bahoda*, 448 Mich. 261, 282, 531 N.W.2d 659 (1995).

*David*, 2010 WL 4671030, at *3.

The Court of Appeals' decision was not contrary to, or an unreasonable application of, the *Jackson* standard. J.B. testified that Petitioner used his finger to touch her in the "middle" of her "private part," the area where she wiped herself after "pee[ing]." (Trial Tr. of Mar. 12, 2009,

at 64–66.) She also stated that Petitioner would "move" his finger while touching her "private part," which made her feel "weird." (*Id.* at 66.) Later, Dr. Horling testified that urine comes from the urethral orifice, which is inside the labia majora and labia minora. (*Id.* at 170–71.) She also stated that the clitoris was inside the labia majora, and that if the clitoris was touched, there would be a "physiological response" whether or not the person was sexually active. (*Id.*)

A reasonable juror could have inferred from this testimony that Petitioner used his finger to touch J.B.'s labia majora and labia minora. This is enough to satisfy the standard for penetration under Michigan law. *See Legg*, 494 N.W.2d at 798 (holding there was sufficient evidence of penetration when "[t]he complainant said that defendant touched '[t]he part [of her body] that I go to the bathroom with' with his mouth."); *Lockett*, 814 N.W.2d at 307 (holding that there was sufficient evidence of penetration where the complainant "testified that [defendant's] 'private' was touching where she would use tissue while wiping after urination, and that she experienced pain going into her 'private parts.'"). While Petitioner cites to the portion of J.B.'s testimony where she stated Petitioner would "feel on [her] front part," (Pet. at 32), it is clear that she also testified that he used his finger to touch her near her urethral opening, and, as stated above, a reasonable juror could conclude that he thereby used his finger to touch in between J.B.'s labia majora.

Petitioner also argues that "[t]he medical testimony failed to support a finding of penetration in any form." But Dr. Horling testified that she would not expect to find "physical evidence" in a situation where an adult had allegedly touched a child's vaginal area with his hands only. (Trial Tr. of Mar. 12, 2009 at 169.) And "touching or rubbing" the labia majora, contrary to Petitioner's assertion (Pet. at 29), is sufficient to establish penetration for purposes of the statute. *People v. Bristol*, 320 N.W.2d 229, 238 (Mich. Ct. App. 1981); *People v. Robinson*,

14

No. 300060, 2011 WL 6186828, at *3 (Mich. Ct. App. Dec. 13, 2011) ("[P]enetration of the vagina is not required for sexual penetration."); *People v. King*, No. 297667, 2011 WL 4949709, at *1 (Mich. Ct. App. Oct. 18, 2011) ("The prosecution need only show penetration of the genital opening; touching of the labia majora is considered penetration.").

For these reasons, the Court will not grant relief on Petitioner's third claim.

### D.  Jury Instructions

Petitioner's next claim is that the trial court erred by denying his request for an instruction on inconsistent statements as to J.B.'s testimony and prior statements regarding how many times he had touched her. Petitioner requested the instruction on the basis that J.B.'s statements to Annie Davids were inconsistent with her statements to Constance Rutledge. The trial court denied the request, but did instruct the jury on J.B.'s inconsistent statements about being struck with a belt in the home.

"[N]ot every . . . deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The question on habeas review  is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). To be a basis for habeas relief, the instructions must have infused the trial with such unfairness as to deny due process of law. *Id.* at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)); *see also Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) ("To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.'" (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000))).

15

J.B.'s testimony suggested that David engaged in the behaviors described above (touching her, rubbing his body against hers, and putting her hand on his penis) several times while she was living at the house. (Trial Tr. of Mar. 19, 2009 at 56–58.) However, when social worker Constance Rutledge testified, she stated that after she spoke to J.B. on September 21, 2008, her understanding was that J.B. "had only been touched one time inappropriately by [Petitioner], and it was the time that she had reported to Ms. Davids." (*Id.* at 150.) However, on cross-examination, Rutledge stated that J.B. did not explicitly say that the abuse had only occurred one time; rather, J.B. "said the only inappropriate touching that took place in the Davids' home was when she reported to Ms. Davids that [Petitioner] touched her." (*Id.* at 156–57.) And Ms. Davids testified that J.B. told her she had been "sexually molested by [Petitioner] . . . too many times to count." (Trial Tr. of Mar. 12, 2009 at 238.) J.B. also testified that Ms. Davids struck her with a belt once for eating something she was not supposed to. (Trial Tr. of Mar. 11, 2009 at 81–83.) But when Rutledge was questioned about it on direct examination, she said that J.B. denied that anyone had hit her while she was in the house. (*Id.* at 149.) And Ms. Davids testified that she did not recall any allegations that she had hit J.B. with a belt. (Trial Tr. of Mar. 11, 2009 at 218–21.) The trial court declined to instruct the jury on the former alleged inconsistency, but did give an instruction on inconsistent statements that was tailored to the latter:

> If you believe [J.B.] made a statement inconsistent with her testimony at this trial, the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court, and whether the statement—whether the witness testified truthfully in court. The earlier statement is not evidence that what the witness said earlier is true. And in this regard, we're talking about whether [J.B.] ever stated to anybody she was hit with a belt.

(Dkt. 6-6, Trial Tr. of Mar. 13, 2009 at 51–52.)

16

Petitioner says the refusal to instruct as to the former alleged inconsistency was error because it was "for the law applicable to the defense theory: that the complainant was not credible" and the lack of the instruction on the statements "may have left the jury with the impression that no prior inconsistency existed with respect to the sexual allegations against Petitioner David." (Pet. at 39–40.) The Michigan Court of Appeals disagreed:

> [W]e find no abuse of discretion. As the trial court found, JB told the Protective Services worker that the only inappropriate touching that occurred was what JB had already reported to defendant's wife. JB told defendant's wife, consistent with JB's trial testimony, that the abuse occurred too many times to count. Thus, there was no showing that JB made a prior inconsistent statement with respect to this matter.

*David*, 2010 WL 4671030 at *4. Petitioner says that "[t]his holding missed the point" because the requested instruction, CJI2d 4.5 "provides in part that it is for the jury to determine whether the earlier statements were in fact different from the testimony at trial." (Pet. at 36.)

However, "it must be established not merely that the instruction [was] undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (citation omitted). To start, both the trial and appellate courts determined that J.B. did not make inconsistent statements regarding the number of times Petitioner abused her. "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. This standard also applies to state appellate court findings of fact." *Treesh v. Bagley*, 612 F.3d 424, 431 n.1 (6th Cir. 2010). The Court does not find that the state courts' determination of the facts was unreasonable, and under this determination, the instruction was not applicable to the statements on the number of times J.B. was abused.

17

Even assuming that the failure to give the instruction as to the number of times J.B. was abused was error, the Court must consider the effect of an erroneous instruction "in the context of the overall charge." *Cupp*, 414 U.S. at 147. Here, the trial court gave several instructions to the jury explaining that they should determine witness credibility, including the following:

> [Y]ou should think about each witness and each piece of evidence, and whether you believe them. Then you must decide whether the testimony and evidence you believe proved beyond a reasonable doubt that the defendant is guilty. . . .

> [T]here is no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions: . . . [including] All in all, how reasonable does the witness's testimony seem when you think about all of the other evidence in this case? . . .

(Trial Tr. of Mar. 13, 2009 at 50–52.) Furthermore, the trial court's modified "inconsistent statements" instruction still left open the possibility that J.B. made other statements that were inconsistent with her testimony at trial. And defense counsel was able to cross-examine J.B. regarding her conversation with the social worker. (Trial Tr. of Mar. 12, 2009 at 87–88.) Accordingly, the fact that the trial court did not specifically point out that J.B.'s statements as to the number of times Petitioner abused her did not "render[] the entire trial fundamentally unfair." *Mitchell*, 274 F.3d at 355.

For these reasons, the Court will not grant relief on Petitioner's fourth claim.

### E.  Request to Review Testimony

Petitioner next argues that the trial court deprived him of a fair trial when it denied the jury's request to review J.B. and D.J.'s testimony during deliberations. The request occurred on the first day of deliberations, March 13, 2009. The trial court addressed the request as follows:

> Ladies and gentlemen, as soon as you went in you sent out this note that says 'both [J.B.], [D.J.] testimony. . . . Now, we can always, and we'll always get the testimony for you if you need it. But you won't get this testimony until at least Monday, and that depends on my paying [the court reporter] . . . [the] expedited rate. . . . But she can't do it until Monday. So, what I'm going to do is I'm going

18

> to ask you to go back in there and spend some time talking about what you heard. If you cannot reconstruct the testimony, if you really have some serious questions about what somebody said, then I will order the court reporter to start preparing that.

(Trial Tr. of Mar. 13, 2009 at 65–66.) Defense counsel did not object. (*Id.*)

Respondent asserts that this claim is procedurally defaulted. The Court agrees.

Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). However, there is an exception where a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Courts of this Circuit apply a four-factor test to determine whether a claim has been procedurally defaulted:

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. Second, the court must decide whether the state courts actually enforced its procedural sanction. Third, the court must decide whether the state's procedural forfeiture is an 'adequate and independent' ground on which the state can rely to foreclose review of a federal constitutional claim. 'This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.' And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was 'cause' for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013) (quoting *Greer v. Mitchell*, 264 F.3d 663, 672–73 (6th Cir.2001)).

The first element of procedural default is satisfied. In Michigan, defendants in criminal cases are required to preserve their claims for appeal by making an objection in the trial court.

*People v. Carines*, 597 N.W.2d 130, 137–39 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994). Petitioner failed to follow this rule by not objecting to the trial court's response to the jurors' request to review the complainants' testimony. (Trial Tr. Vol. III, 64-66, Mar. 13, 2009.)

The second element of procedural default also is satisfied. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits." *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). The Michigan Court of Appeals reviewed Petitioner's claim for plain error, reasoning that "defendant did not object" to the court's response to the jury's request. *David*, 2010 WL 4671030 at *5.

Petitioner argues that the appellate court "did not deny relief based on any procedural default; rather, when denying the issues, the court addressed the issue on its merits and held there was no 'coercion' in the way the trial court handled the request." (Reply Br. at 7.) But that holding was in the context of the court's review under the plain error standard—and "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing cases). Moreover, even if the appellate court had addressed the issue under a different standard, an alternative analysis "does not require [this Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a

federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

The third element of procedural default is also satisfied. Here, the Court must determine whether the procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)). "[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts[.]" *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011) (citing *Carines*, 597 N.W.2d at 138–39). And the Michigan Court of Appeals actually relied on the rule to foreclose relief in this case. *David*, 2010 WL 4671030 at *5.

To summarize, Petitioner failed to follow a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Petitioner's claim. Therefore, federal habeas review of Petitioner's claim is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner has not presented cause for the default. He blames his trial attorney for failing to perfect the issue for appeal. (Reply Br. at 8.) It is true that ineffective assistance of counsel can constitute cause for a procedural default; however, the doctrine of exhaustion of state remedies

"generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). Petitioner did not raise an ineffective assistance claim in the state appellate courts. (*See* Dkt. 6-9, Def.'s Br. on Appeal at 31–33.) Accordingly, the Court concludes that Petitioner has failed to established "cause" for his procedural default. As a result, the Court need not determine whether Petitioner has established resulting prejudice. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010).

In the absence of "cause and prejudice," Petitioner can prevail on his claim only if he can "demonstrate that the failure to consider [his claim] will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to address the substantive merits of Petitioner's claim.

In addition, even if the Court were to find that Petitioner had not procedurally defaulted the claim, it fails on the merits. The Sixth Circuit has stated:

[i]t is generally within the trial court's sound discretion to determine whether particular jury requests will be granted. Such a ruling, like rulings concerning the

22

admissibility of evidence, may not form the basis of federal habeas relief unless a constitutional question is raised.

*Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986) (internal citation omitted); *see also United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) ("[T]he decision to re-read testimony to the jury is within the trial court's discretion[.]"). A trial court's error is "remediable" on a petition for writ of habeas corpus only if the error "'rises to the level of depriving the defendant of fundamental fairness.'" *Spalla*, 788 F.2d at 405 (quoting *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984)).

Here, the jurors asked for the complainants' testimony twenty minutes after they began their deliberations on a Friday morning. The trial court noted that the court reporter had a back-up tape, but listening to the tape would take as long as it did to hear their testimony and that one of the complainants spoke so softly that the tape would probably not be useful. The court then asked the jurors to continue talking about what they had heard. The court said that, if the jurors could not reconstruct the testimony, or had serious questions about what somebody said, the court would order the court reporter to start preparing the transcript. The court stated it could have the testimony on the following Monday if it paid the reporter an expedited rate. (Trial Tr. of Mar. 13, 2009 at 65–66.) The jurors resumed their deliberations at 10:55 a.m., took a lunch break from about 12:45 p.m. to 1:45 p.m., and reached a verdict at 3:08 p.m. that day. (*Id*. at 66–68.)

Because the trial court "did not reject the jury's request outright and informed the jury that the information would be provided if necessary, . . . encouraging the jury to partake in further deliberation without the aid of the requested transcript [was not], in itself, an error." *Spalla*, 788 F.2d at 405. The Court therefore declines to grant relief on Petitioner's claim that the trial court's supplemental instruction deprived him of a fair trial. Petitioner's claim lacks merit in addition to being procedurally defaulted.

For these reasons, the Court will not grant relief on Petitioner's fifth claim.

**F. Sentencing Issue**

In his sixth and final claim, Petitioner makes a two-pronged attack on his sentence. Petitioner first argues that his minimum sentence of twenty-five years in prison for first-degree criminal sexual conduct is cruel and unusual punishment under the Eighth Amendment. Petitioner also alleges that his trial attorney was ineffective for failing to argue in favor of a lesser term.

The Court agrees with Respondent's contention that Petitioner did not exhaust state remedies for his Eighth Amendment claim. "The doctrine of exhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition." *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). Although Petitioner challenged his sentence on direct appeal, he did not raise the issue as a constitutional claim. He argued instead that the trial court abused its discretion by not considering whether to depart below the mandatory twenty-five year minimum sentence where substantial and compelling reasons existed to support a downward departure. (Def.'s Br. on Appeal at 34–39.) Petitioner cited two federal decisions in connection with his claim that his trial attorney was ineffective at sentencing, neither of which addressed any Eighth Amendment issues. *See Glover v. United States*, 531 U.S. 198 (2001) (addressing *Strickland* prejudice); *Mempa v. Rhay*, 389 U.S. 128, 130 (1967) (addressing "the extent of the right to counsel at the time of sentencing where the sentencing has been deferred subject to probation"). And he did not cite the Eighth Amendment, nor use the phrase "cruel and unusual punishment" in his argument about his sentence. Therefore, his Eighth Amendment claim is unexhausted.

24

The exhaustion rule, however, is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Court finds that Petitioner's unexhausted claim lacks merit.

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const., amend. VIII. But the amendment "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). A twenty-five-year sentence is a substantial length of time, particularly for a man such as Petitioner, who was fifty-six years old at sentencing. But his sentence fell within the statutory maximum of life imprisonment for first-degree criminal sexual conduct committed by a person seventeen years of age or older against a person less than thirteen years of age. *See* Mich. Comp. Laws § 750.520b(2)(b). "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'" under the Eighth Amendment. *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995); *see also Paris v. Rivard*, 105 F. Supp. 3d 701, 724 (E.D. Mich. 2015), *appeal dismissed* (Sept. 8, 2015). The Court therefore concludes that Petitioner's minimum sentence of twenty-five years is not grossly disproportionate or cruel and unusual punishment.

Petitioner next contends that his trial attorney was ineffective for failing to make the trial court aware of alternative sentencing options and for failing to argue that a lesser sentence was appropriate. (Pet. at 45.) The Michigan Court of Appeals disagreed with Petitioner and

25

concluded that "defense counsel was not ineffective for failing to argue in favor of a lesser sentence" because the applicable statute "required a mandatory minimum sentence of 25 years" under the circumstances. *David*, 2010 WL 46710730, at *5.

Under Michigan law, first-degree criminal sexual conduct committed by someone seventeen years of age or older against someone less than thirteen years of age is punishable "by imprisonment for life or any term of years, *but not less than 25 years*." Mich. Comp. Laws § 750.520b(2)(b) (emphasis added). In other words, § 750.520b(2)(b) requires a twenty-five-year mandatory minimum sentence. *See People v. Benton*, 817 N.W.2d 599, 608 (Mich. Ct. App. 2011). The complainants in this case were under thirteen years of age at the time of the crimes, and Petitioner was in his fifties (over seventeen) when the crimes occurred. Consequently, the trial court was required to sentence Petitioner to at least twenty-five years in prison for his first-degree criminal sexual conduct convictions. It follows that defense counsel was not ineffective for failing to argue that Petitioner's minimum sentence should be less than twenty-five years. "Omitting [a] meritless argument[] is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The Court declines to grant relief on Petitioner's ineffective-assistance-of-counsel claim.

## IV. CONCLUSION

The state appellate court's decision in this case was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Furthermore, as to the claims that the state court adjudicated on the merits, the state court's decision was not contrary to clearly established federal law, an unreasonable application of clearly established federal law, or an unreasonable application of the facts. The Court also believes that no reasonable jurist would argue that David's claims have merit, so a certificate of appealability will not issue from this

26

Court. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if David nonetheless chooses to appeal, the appeal would not be in bad faith; so he may proceed *in forma pauperis* on appeal. *See* 28 U.S.C. § 1915(a)(3).

Accordingly, IT IS ORDERED the Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED.

It is further ORDERED that a Certificate of Appealability is DENIED.

It is further ORDERED that Petitioner may proceed *in forma pauperis* on appeal.

SO ORDERED.

                                    s/Laurie J. Michelson
                                    LAURIE J. MICHELSON
                                    UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 18, 2016.

                                    s/Jane Johnson
                                    Case Manager to
                                    Honorable Laurie J. Michelson